for the Appellant. We have August Appleton for the Appellee, Diane Cherry for the Appellant, and Mr. Michael Costello for five minutes. Please proceed. Thank you, Your Honor. It's an initial matter. The last time I was before this court, I was completely oblivious to this little light, so please, if it's flashing, advise me. Thank you. I appear before this court on the petition to intervene filed by my clients Scott Dambacher and Arthur Dambacher. These are the two sons of the divorcing parties and minority shareholders of the large Merrill Corporation, 40 Grain. The Merrill Estate owns 40% of the shares. They filed a petition to intervene after the divorce. Is it 40% or 70%? No, the Merrill is 70%. Sorry, I got mixed up with 40 Grain there. So my clients filed a petition to intervene alleging that it was an abuse of discretion for the court to dissolve 40 Grain and that the court exceeded its statutory authority in doing so. The petition to intervene, I believe, was timely because the argument is that the order itself is void, that a court sitting in a divorce where the Merrill assets are shares cannot get further into the management and the dissolution of the corporation unless using the specific provisions of the Business Corporation Act. The reasoning of voidness, I believe, is threefold. First of all, subject matter jurisdiction. This is a divorce. I believe the case law says that the court has limited jurisdiction in these matters. The purpose is to divide the assets and the court can order the sale. But in this circumstance, that asset was shares. It was not the specific assets of the corporation being farmland and equipment. Now, the second provision basis that I believe is void is personal jurisdiction. And that in order to dissolve a corporation, I believe the court must have jurisdiction over the corporation itself. And also, being that the minority shareholders were there, I believe that all shareholders should be present if the corporation itself is not. Lastly, I believe the CH matter that was filed by my clients prior to starting the trial was a corporate case that named all parties named Cheryl in her capacity as the sitting president of 40 Great. Now, the intention of that case was to try to resolve the shareholder dispute. Instead, the divorce court went forward on its own. And I believe that it exceeded its jurisdiction by order of voluntary acts as well as ordering the dissolution, the actual sale of all the shares and all the assets of 40 Great. In petitioning to intervene, I also believe that it was an abuse of discretion for the court to grant a sanction against my clients in seeking for attorney's fees from Cheryl. My clients, in being denied the petition to intervene, if the court did not exceed its authority and the order would stand, I believe they should still be allowed say on how this corporation is dissolved. To object to the sale of land and say that it's not an equitable price sort of sale of farm equipment. To object to the settlement of any claims by the corporation against other third parties. They have been denied that as it stands right now. Mr. Appleton, am I to assume that the corporation has not been dissolved in spite of the court order? It has not been dissolved at this time. No land has been sold. There's still pending L matter, which the corporation has been named as a defendant in now and is also a defendant in the CH matter. I'm a little perplexed. What significance should we attribute to the fact that your clients, you know, they have a minority share and are struggling with. They would never be in a position to dictate how things would go because they don't own enough of the shares. Individually, they do not. But a corporation, all shareholders have equal rights in accordance with the percentage of their shares. Robert Dombacher and his two sons generally agreed on the management of the corporation. I think that's clear in the record as well. That is 65% of the total shareholders. So the action of the divorce court actually granted a minority shareholder majority control of the corporation. So I believe in my client's rights, if all shareholders were allowed to exercise the rights, this corporation would have continued to be managed. Now, the issue still exists on how the divorce court would address this matter. And I think the divorce court could have sought to have my clients intervene. When they did try to intervene in 2012, they were met with a threat of sanctions then. Well, they withdrew that though, right? Yeah. And they also filed a separate cause of action addressing the issues in the CH case. So if they didn't pursue intervention when they had the opportunity to do so, how can this court remedy that? They just simply filed the motion to intervene or petition to intervene and then they never pursued it. Well, they ultimately withdrew it. And I think it goes to the analysis of what was the divorce court going to, could it do? With these voting shares, it could allocate certain assets to one party and then say, well, you're going to get more than 35% of the shares and perhaps there's a buyout provision that the court's going to try to enforce. But I don't think the court had the ability to say, you as majority shareholders must voluntarily dissolve this corporation. So I think in their initial petition to intervene, they backed up thinking that the court is not going to materially affect their individual rights. They filed another cause of action seeking to protect those rights, substituted the judge in the instant divorce case. And the court in divorce proceeded and they had to see what the court was going to do.  I think the business corporation act provides the appropriate remedy for the buyouts of a minority shareholder. And so essentially, before ruling, my clients weren't sure what the divorce court would actually do. They didn't hire counsel to analyze the extent of the authority. And the conclusion was that they didn't think the divorce court would be able to dissolve the corporation as part of the division of marital assets. In your response to Justice Holder White, you indicated that Robert's shares combined with your client's shares would amount to about, what, 65% or something? Correct, Your Honor. In the trial, at least as I read it, Robert, Don Bonner's position was that he agreed intervention should be allowed, but that's not the case anymore. So does your argument still hold water? That Robert Donbacher agreed in the underlying divorce, I'm not sure what stage it is. Supported your client's position, that is, to intervene, but that's no longer the case, is it? I'm confused. I thought he objected at the trial court level, the father. Maybe I've got it wrong. There were different counsel at times. Maybe positions were changed. But I do think that prior to the divorce court intervening and the shareholders, the parties were managing the corporation, and the decisions of 65% were controlling the corporation. Cheryl came in and said there's a dissipation or waste or they're paying big payments out of themselves. And section 12.56 provides that remedy. I'm not sure that the divorce court can do anything to Robert except say you're restrained from selling those shares, you're encumbered from transferring those shares to anybody, and I don't think it has a very limited ability to order what is actually done with those shares beyond the transfer, sale, or encumbrance. Now, did their father object to their initial motion to intervene? I do not believe there was an objection filed, but I can't recall what his response was besides the record. Well, just practically speaking, what does Mr. Dombach's death do to all these proceedings? Well, the death and the proceedings, I don't know that it's outside the record, but my clients are the sole beneficiaries of his estate. And I think whether or not it's reflected well enough in the record, I believe the intention of Robert Dombacher was to, when he passed on, to leave his son to this corporation. And due to that, that is now gone because the divorce court entered an order to dissolve that.  And I'm looking at the order to voluntarily dissolve, and I just don't see how a court can take a provision in the statute that says it's voluntary and make you do it. I think there was a procedure set up, my clients tried to get a CH case with the procedure, that would have allowed Cheryl to come in and say, you're mismanaging the corporation, you're wasting my assets, none of these other remedies are going to work, you need to buy me out. And that would have been totally within the court's jurisdiction in the CH case and would have allowed her to liquidate her shares. I think the divorce court, while further in the proceedings before that case was filed, had less resource and limited ability to manage corporate affairs because the sole asset was the shares. The divorce judgment essentially says you can't manage the act, and the divorce court doesn't have the authority to manage the corporation. But when you change the status quo, give one party 70% the super majority, you're essentially managing the corporation, you're picking who is in charge. The trial court was trying to find a way to protect the interests of Cheryl, correct? Yes. Well, why doesn't a court in a disillusioned case have the authority to fashion a remedy to do just that, protect the rights of all the parties involved? Well, I think it does when the sole person being accused of causing harm to those rights is the opposing party. But these are actions of third parties, so that they're heavily alleging that he's just in cahoots with. So I think the proper remedy is just you've got to sue the people that you think are harming you. If it's three people, you can't just attack one because you have a divorce proceeding. I think you need to go into court and say all three of you are ordered to refrain from these specific actions. The court didn't have the authority to order my clients to do specific acts. It could have added them sua sponte on its own motion if that was the way that it wanted to complete it. My clients were in the position that they had orders that were affecting the management that sometimes were utilized, sometimes were not, hoping that the whole dissolution process would end, those temporary orders would go away, and that the court could fashion some division of the assets. Further, while Cheryl does, the intention of her is always to get out of the corporation, she named herself president. So that's, I believe, a conflicting position in that she wants this corporation done, she wants it dissolved, but she also wants to control and manage it and reframe the ability of the minor shareholders to have a say while she's also seeking to have the whole thing go away. Well, if the corporation is dissolved, what happens? Don't they sell all the assets and then divide whatever the assets bring monetarily? Yes. Proportionally with the percentage of the shares that they own. Why is that not fair to everyone? Well, because the intention of the corporation was to continue doing business as it had for nearly 20 years, which is owning farmland and equipment and farming land. My clients are in the profession of farming. This was a business that they assisted with. They knew that their dad wanted to leave them with this business and that they would be able to continue farming the land. Now, the dissolution of the corporation has an extraordinary cost, especially since the value of this land has substantially increased during ownership of the corporation. So a dissolution is going to require a capital gains tax on all these assets before the transfer of shares. So essentially they would be left with a pot of money that's less than what they think the corporation is worth and also deprived of their livelihood. And so that's why I think the corporation is much more valuable intact than it is dissolved. I think that Cheryl's interest in the corporation, the value of her shares, is much higher with the corporation intact than it is dissolved. So I guess to conclude, I think it's well laid out in the briefs. The record is quite full of information in this matter for the court to evaluate. But I believe that looking at the April 1, 2013, order that changed the status quo by depriving Robert of his voting rights. The status quo was each party voted their shares. It was argued by Robert's counsel that this is just going to lead to another lawsuit, which it did when the CEH case was filed. It was also argued that that would be the appropriate remedy, a corporate and that the two boys are not party to the lawsuit. Well, what's the status of the CEH case? It's essentially preliminary injunctive motions have been filed and they've been denied on remedies law and it's kind of been sitting there while this gets sorted out. So then further, after the CEH case was filed, this July 25, 2014 order confirming the authority of Cheryl essentially gave her all these remedies. She could fire Scott and Art, she could do a variety of corporate actions and those are essentially remedies under the Business Corporation Act. When I was preparing my brief, I was actually thinking about a time when I was told by a judge, well, I can't do this in a corporate case. And I was looking at the action and it says they can basically do about anything. They can restrain them from acting, they can order them to hire people, to fire people. The court has great authority over the management of the corporation when it's sitting under the Business Corporation Act. I think the divorce court here was very limited, but exceeded that authority. So my clients are essentially asking that their petition to intervene, the decision to deny that, be reversed and that the finding that the orders affecting the management and ordering the dissolution of 40 grain be ruled void. And further, that it be found that it was not an abuse of discretion for them to file the petition to intervene on a post-judgment basis due to the fact that a void order can be attacked at any time and so the tideliness factor does not carry as much weight as in normal proceedings. Based on the language that a void order can be attacked at any time, I believe it's arguable that the timeliness factor just doesn't really apply when the court has exceeded its jurisdiction. So I believe my clients came into court. They did not want to be parties to a divorce proceeding. They filed other proceedings raising their issues that were answered. There was no motion to dismiss on there's another court of competent jurisdiction that's handling the same proceeding. It was answered by Cheryl and then the divorce court went forward with the dissolution. And so I do not believe it was meant to harass, to delay. They were coming into court because something that they believed was extraordinary had happened. It affected their property rights and they're saying, well, here we are, Judge. You're affecting our property. You're ordering the sale of our property. And I think due process would require that they be allowed to object to the sale of land, to say that it wasn't a fair transaction, to state that they should be able to purchase certain assets or that maybe the farm should farm for one more year while the sale is going on. And I think they had those rights. And I think as it stands, they've just fundamentally been denied those rights. So I respectfully pray that the court reverse the order granting sanctions and reverse the order denying the petition to intervene. Thank you very much, Your Honor. Thank you. You'll have rebuttal. First of all, I think it should be clear what is at issue here. This is an appeal from the denial of a petition to intervene and from an award of attorney's fees. The intervener's right to intervene, first of all, in terms of timeliness, it didn't meet the standard of timeliness. They didn't allege in their petition that it met the standard of timeliness. They put on no evidence showing timeliness. This was a motion filed after the judgment was entered. They didn't even allege any reasonable basis for them to have delayed filing their petition to intervene until after the judgment was entered, other than we decided to sit back and wait to see what you did, which is not a diligence. And again, they didn't even allege it. Their sole basis of saying we have a right to intervene at this point in time post-judgment is saying that the judgment was void. And that's the issue that they have to prevail on in order to prevail in their appeal, I would submit. Their argument in front of the trial court that the order was void was saying the court didn't have subject matter jurisdiction. It was void for lack of subject matter jurisdiction. And Mr. Appleton argues that a bit again today. He didn't argue it was void for lack of subject matter jurisdiction in his initial brief before this court, but he did address it in his reply brief. And we get into issues of whether he's allowed to do that because he didn't address it in his original brief. And under the Supreme Court rule, if you don't raise it in your brief, you're not allowed to do it subsequently. And we also, by the way, do have a motion to strike that this court took under advisement with regard to some of his arguments, including that. Well, including the issue of timelines, actually. Okay, I'm getting ahead of myself. With regard to the subject matter jurisdiction, his argument that it is void for lack of subject matter jurisdiction is wrong. He argued it based on a case from 2001, subsequent to which the Illinois Supreme Court addressed what constitutes subject matter jurisdiction that renders or lack of it that makes a judgment void. And clearly, I believe if you look at the Toyota case, and I cite a McCormick case also, this court, it was a justiciable action. The trial court had jurisdiction over the action. It was a divorce action. If the court made some error in misapplying the Divorce Act, that does not render the judgment void. It may make an error that Mr. Dombacher Sr. can raise on appeal. It does not make it void. That was their arguments in front of Judge Sanchez. Judge Sanchez properly applied the law that related to the issue and properly applied their motion. Now on appeal, they argue, in addition, that it was void because they were necessary parties. We submit they were not necessary parties. What the judge did, he did not order a dissolution of the corporation under 12.56 of the Corporation Act. He ordered a dissolution, which he ordered the parties to proceed to dissolve the corporation as they were entitled to do based on the number of shares of stock that they owed in the corporation pursuant to 12.15 of the Business Corporation Act, which provides for liquidation if more than two-thirds or at least two-thirds of the shares are voted for liquidation. Marital estate in this case owned 70% of the shares, well, more than 70% actually, well in excess of that two-thirds amount. The court could have awarded my client all of the shares and she would have voted, in fact, Mr. Appleton conceded this in his reply brief, could have awarded her all of the shares. She voted to liquidate and it would have proceeded. They did not have to be a party to that action. They are not parties to that action. There is no right of theirs based on the number of shares, their interest in the corporation that was restricted, ruled on, denied in any way by Judge Sanchez. He only ordered the parties to do what they were entitled to do as owners of the number of shares of this corporation that they owned. So Robert and Scott Dombacher were not necessary parties to this action. Their basis for saying, oh yes, we're necessary parties is essentially saying, I think they say this in their reply brief, yeah, the judge could have given all the stock to her, we wouldn't need to be involved. The judge could have, or excuse me, the parties could jointly vote to liquidate, we wouldn't need to be involved. They say, we need to be involved because the judge is directing Robert Dombacher to vote the shares and he doesn't want to. Well, whether or not Robert Dombacher can be compelled by the divorce court, whether the court has the authority to compel him, may be an issue that he can raise on appeal, but it's not an issue for them. They're not being compelled by this order to do anything. They have all their rights and remedies based on their ownership interest in the corporation to pursue. Mr. Appleton made some statement about being sure that it's a proper value that's being paid for the assets of the corporation if there's a liquidation. They still have that right. Judge Sanchez's order did nothing to restrict that right. This, Judge Sanchez was attempting to decide the appropriate disposition of the marital estate after a 50-year marriage. The parties were, at the time that this judgment was entered, 68 and 72. Their major asset was this corporation. And I would note that their proportion of interest in this corporation was because they had put into this the property that they had accrued over the course of their marriage. Those parties did not have the ability to go forth and live an appropriate life without liquidation of the corporation. That was clear to the court. And, in fact, the fact of the liquidation was made necessary because of some actions on the part of Robert Dombacher in transferring away an asset that he had, transferring away to the interveners, by the way, an asset that he had that could have been used to try to do something different than ordering a liquidation of the corporation. But at the time that the judge was making this decision, that option was no longer available. I don't know what else the court could have done to enable these people to go forward than what it did. And to suggest that, oh, well, they should have done a separate action, they should have proceeded under 12.56, does not solve the problem. Because under 12.56, in order to get to the stage of compelling some sort of a buyout, you first have to show, you have to prove one of the factors that create the, one of the factors in subsection A of 12.56. And those are basically that there's a deadlock of the shareholders or the directors or there's mismanagement. Now, Mr. Appleton says, well, Cheryl could have gone to court and claimed mismanagement. Yes, she could. But claiming it doesn't necessarily make it so. It doesn't give you the determination that there was mismanagement. And there has been no acknowledgment on the part of Robert and Scott Dombacher that they mismanaged. So what do we do? There's just the divorce court, oh, make them go do this whole separate action, incur all sorts of attorney's fees, don't make them, even when they have the power to liquidate by a vote of the shareholders, make them pursue this whole other action that may not even be successful. And I would submit to you that is not something that the court should have done, would have done, or is required to do. Because he had under his jurisdiction the majority of shares of this corporation. And he had the power to award it to either of the parties. And I would submit he had the power to tell the parties, you're getting this, but it's subject to these conditions. And that happens all the time in divorce cases. You're getting this, but you have to refinance it. You're getting this, but, you know, it gets resold at a different point and you pay a share of the equity to the other side. That happens all the time. There is nothing under the Divorce Act, I'll withdraw that. With regard to what Judge Sanchez ordered in the divorce case, they were not necessary parties to that action. And therefore, it does not avoid judgment and their petition to intervene, their appeal at this point, should be denied. With regard to... I'm sorry, Judge, you sort of looked askance at that. With regard to... Mr. Cherry, Mr. Appleton raised the concern that the court's order would cause the sale of the farm ground resulting in a capital gain and therefore a substantial capital gain tax. Is that something that this court should take into consideration? And is he correct? Mr. Appleton, is he correct in making that assertion? There's actually three issues. One is, is it in the record? Secondly, is it correct? And third, is it a consideration? I don't know that there's anything immediately in the record about it. I believe there will be some capital gain tax. But is it an appropriate consideration? Well, first of all, the question is, does that make this judgment void? And I don't believe it still makes it void. Again, that is part of the nature of what their ownership interest was and what Cheryl and Robert's ownership interest was. And we're not changing that. And there may be a tax. But in this context, what alternative is there? He suggests, well, for Cheryl, her interest is worth more if the corporation remains intact. Again, that doesn't address the issue in this case, which is, is this order void? But even beyond that, it being intact, if it's sitting there in farmland for which they are getting a much lesser rate of return than if they had that money invested, that doesn't do her any good. She can't eat that piece of paper for the stock in the farmland. And we still have the problem of ongoing interrelationship of two divorce parties, which the Divorce Act specifically indicates, or the case law, that you're supposed to try to sever. And we also have a history in this case of Robert and his sons combining together to cut Cheryl out, to disenfranchise Cheryl. So it may be there's a capital gain tax. But there is no viable alternative in this case than that at this point, because they can't keep going on with the corporation the way it is. And Cheryl can't live on what, as I said, that piece of paper. And they can't sever the relationship of Robert and Cheryl without that liquidation. And I would note also, Robert himself said, I don't have enough money to live on. Robert asked for maintenance from Cheryl, saying, I don't have enough money to live on. And Robert had attorney's fees he had to pay. So where was he going to come up with the monies to do that? So in terms of the propriety of the court's decision and whether under the circumstances of this case and the situation that the court found the parties in in itself at the time of the end of the evidence, what the court ordered, I would submit, is the only viable alternative. And again, it didn't take away from any of the rights or entitlements of Scott and Art Dombacher. They still have them. They still have the right to liquidate the corporation. I see my light has turned, and so very quickly, if I may, with regard to the attorney's fees award. As Justice Turner noted, and as Justice Holder White noted, these folks petitioned to intervene and then withdrew it quite earlier in the divorce case, in 2011 or 12. I can't remember when, because now the years are running together in this case. And to answer your question, by the way, the initial petition, my motion basically said they don't meet the proper form for a petition to intervene. They didn't say what the grounds was that they had to intervene. They didn't say what they were going to try to do in the intervention. Mr. Dombacher's attorneys objected to the intervention at that time. I believe when they tried to intervene after the judgment, Mr. Dombacher's attorney was agreeable to them doing it. And I want to note another thing here, too, very quickly. All through this case, Robert Dombacher was arguing what they wanted to argue if they were allowed to intervene. So they wait until after all those arguments are made, until after the case is decided, after we've finished numerous days of trial. And then when they don't like the judge's ruling with regard to that, they want to come in and make the same arguments again. I submit the judge, and the judge made some detailed findings with regard to the attorney's fees award. The court found that they had an inadequate basis in law. And again, I would note that they did not argue the necessary party arguments at that stage. All they were saying is there isn't subject matter jurisdiction, and that position was clearly contradicted by the Toyota case and the subsequent cases about what makes subject matter jurisdiction. The court found they didn't have an appropriate basis in law for their filing, and the court also found that they brought this for improper reasons. And I would submit that he was correct in that finding. Again, they held back, and I would suggest they held back. Thank you. Mr. Costello. I'm not going to, may it please the court, counsel, I'm not going to plow the same ground. In answer to Justice Turner's question about the Siege case, there is another case, a shareholder's case, still pending. Approximately a month or two months ago, the children, Scott and Art, dismissed Robert from the case, so he is gone from that shareholder's suit and the Siege case. I've agreed with Cheryl's counsel that at the timeliness of the presentation of the petition to intervene, it was not timely. I do object, I do agree with Appleton's argument that the court exceeded its authority, but that is going to be more cognizant and coherent to the court when I argue the appellate brief. And I also have suggested that it was an abuse of discretion to sanction someone who was not on the petition. Someone trying to exercise their rights. It has a chilling effect, especially in this case, with everything going on, that Judge Sanchez abused his discretion in issuing sanctions on the intervene. That's my argument. Thank you, gentlemen. First, I would say that I do believe in the petition to intervene, that my clients did argue subject matter jurisdiction, they argued about the limited authority of the court. And what's your response to the case file that Ms. Cherry points out regarding a justiciable matter, and that that's the only inquiry? Well, I think that it also goes into the issue of personal jurisdiction. If this is justiciable, and we're dissolving a corporation, are all the necessary parties there? I think in looking at the power of the Dissolution Act, which divides assets, and when there's not a clear division, can order things like the sale, and can go as far as, I recall the case where a court ordered a father to settle a lawsuit. In that particular case, I believe it was within the court's discretion, because he was not paying maintenance or child support, or something along those lines, that the court clearly has the authority to order. And looking at what the court did have the authority to order, so in dividing the assets, the hypothetical of giving Cheryl 70% of the corporation, is that within the court's authority? Yes, but in my mind, I believe it would be an abusive discretion, considering this is the vast majority of the marital estate acquired over 50 years. So to award her those total shares, I believe it would be subject to a slightly different analysis, but if that's what would happen, it just may so end up back here later. Now, the issue, there was also discussion of a farm that was transferred. It's my understanding that was a non-marital farm, so perhaps some agreement could be made to leverage, or it could have been leveraged upon an order to make a payout, but I do not know that the court could order him to transfer that to her to sell it, or what else, because it was non-marital, it was an inherited farm. But it was certainly something the court was allowed to take into consideration in making the ultimate determination as to how to divide the assets of the marriage. Yes, and I think what the court could do, because he transferred it, is simply construe it as still being his. I mean, he could still say, well, you got rid of the farm, but I'm going to suggest that you are worth $2 million that you should have been worth. Did the court do that? I believe it took issue with the transfer of the farm and considered it. Couldn't the court basically come out saying, this is what you could have had had you not transferred it, so I'm not going to look at you as a pauper. You could have had this, you decided to transfer it, which sounds like what you're saying it should have done. Yeah, I think he could do that in the consideration of maintenance and other factors outside the scope that's between the two parties in this matter that doesn't affect my parties, because they're only concerned with the corporation and maintaining the corporation. Now, Cheryl was claiming mismanagement through the Divorce Act, so the argument that there was some standard that could not be met in the Business Corporation Act, I don't believe that's the case. I think she was going to the divorce court saying they're wasting and mismanaging the corporation, and that's the threshold of what's necessary. I believe in the Business Corporation Act, it also says likely to mismanage assets or to obstruct a shareholder. So even before it's there, just saying these people are absolutely adverse to me, I believe would give her standing to bring these issues before the courts under the Business Corporation Act. Now, the court is supposed to try to sever these parties, and this is a tough situation. I couldn't help but think of the analogy of three law partners who practice together where two of them are married. If the court wanted to protect one of the law partners during a divorce, I don't believe the court could override the other two partners agreeing on acts. I think the argument is, well, you have a third partner that's causing some of the problems here. You need to get them in as a party somehow, and whether or not it's in a sua sponte intervention in a divorce or filing a separate lawsuit, I think that's two ways to go about it, neither of which was done here. So therefore, I reassert my prayer to the court on the reversal, and thank you very much, Your Honors. Okay. Thanks to all three of you, the case is submitted. The court stands in recess.